## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CT-01092-SCT

*CINDY WALLS*

*v.*

*FRANKLIN CORPORATION AND EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/1999 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY O. PARKER |
| ATTORNEY FOR APPELLEE: | JACKSON H. ABLES, III |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | JUDGMENT OF THE COURT OF APPEALS REVERSED - 10/11/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/1/2001 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. This appeal presents the question of whether an injured worker, entitled to reasonable and necessary medical services and supplies under our Workers' Compensation Law, may incur such expenses without first having the Workers' Compensation Commission determine their reasonableness and necessity. The answer to this question in turn reveals whether the worker may maintain a civil action against her employer and its workers' compensation insurer for bad faith refusal to provide benefits without the Commission having made such a determination. In this case the circuit court dismissed the worker's bad faith suit for failure to submit the question of reasonableness and necessity of the expenses in question to the Commission. The Court of Appeals reversed and remanded. This Court granted certiorari to consider this question of first impression. After due consideration we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I.

¶2. Cindy Walls injured her back while employed with the Franklin Corporation in October of 1984. Employers Insurance of Wausau was Franklin's workers' compensation carrier. Walls was sent to Dr. William Brown for treatment in February of 1985. Dr. Brown performed a chemonucleolysis procedure at the L4-5 level. In 1986, Walls was treated by Dr. Thomas Turner, who performed a partial laminectomy at L-4 and a fusion. Dr. Turner released Walls in May of 1990 with a 20% physical impairment rating. In 1992 an administrative law judge of the Mississippi Workers' Compensation Commission ordered that

Franklin Corporation and Wausau pay temporary total disability benefits, permanent partial disability benefits, and "pay for, furnish and provide ... all reasonable and necessary medical services and supplies as the nature of her injury or the process of her recovery may require as provided in Mississippi Code Annotated Section 71-3-15 (1972)." Apparently there were further proceedings on Walls's case before the Workers' Compensation Commission, but any subsequent history in this record is only found in pleadings or argument of counsel, and not opinions or orders of the Commission.

¶3. Walls alleges that from 1993 to 1996 she submitted her bills directly to Wausau and established some kind of relationship with Sylvia, one of the adjusters who approved most of Walls's prescriptions. A review of the record reveals one letter from Walls to someone named Sylvia.

¶4. On October 8, 1996, Alan Daigrepont, claim supervisor at Wausau, notified one of Walls's doctors by letter that Wausau was no longer responsible for her continued medical care, as her "claim [had] been dismissed by the Mississippi Workers' Compensation Commission for lack of prosecution on the part of the patient."

¶5. It is further alleged that Walls received several prescriptions for special shoes over the course of her treatment as well as a gym set, but this Court cannot find any verification of this in the record other than in argument of counsel.

¶6. By prescription dated October 24, 1996, Dr. J. Patrick Barrett prescribed whirlpool baths two to three time per week for Walls. Walls proceeded to have a whirlpool bath installed in her home at a cost of $2,433.18. The one letter from Walls to Sylvia found in this record, dated December 11, 1996, states: "While out getting this all together and trying to find the best deal, I failed to keep up with the mileage so there won't be any on this." This letter apparently refers to Walls's building the whirlpool in her home. There are six separate reimbursement checks in the record from Wausau to Walls for travel expenses during 1996.

¶7. By letter dated November 13, 1996, Daigrepont notified Walls that Wausau would no longer be responsible for her "continued medical care as [her] claim [had] been settled without an open ended medical clause." In an affidavit submitted by Daigrepont in federal court, he stated that he had exclusively handled Walls's claims for benefits for Wausau until June 1997, and stated that he had no knowledge of Walls's demand for reimbursement for shoes, and that Walls failed to first notify Wausau before having the whirlpool bath installed.

¶8. By June of 1997, Walls still had not been reimbursed for the shoes or the whirlpool bath. She demanded payment of the outstanding medical expenses several times, and no response or payment was made. In September 1997, Walls filed a complaint in the Chickasaw County Circuit Court alleging bad faith refusal to pay medical benefits. Franklin removed the case to federal court, which subsequently remanded the case to the circuit court. Franklin then filed a motion asking that the Workers' Compensation Commission determine the reasonableness and necessity of Walls's medical treatment. Walls asked that this motion be dismissed. The Commission held these motions in abeyance pending a determination of jurisdiction by the circuit court.

¶9. Franklin Corporation then filed a Motion to Dismiss or Stay and for Protective Order in the circuit court. The circuit court found that Walls had failed to first exhaust her remedies under the Workers' Compensation Act, and dismissed her suit in May 1999. The circuit court specifically found that "exhaustion of the administrative remedial process is a mandatory condition precedent to the maintaining of a 'bad faith'

suit for an allegedly wrongful denial of any workers compensation benefits."

¶10. Walls appealed from this judgment. The Court of Appeals, in a 6-4 decision, reversed and remanded. *Walls v. Franklin Corp.*, No. 1999-CA-01092 COA (Miss. Ct. App. 1999) It found that the Workers' Compensation Commission had "fully adjudicated" the issue of payment and expenses and Franklin's refusal to pay for shoes or a whirlpool bathtub for Cindy's home could amount to bad faith.

¶11. The dissent found that the Workers' Compensation Commission had not adjudicated whether the medical services in question were reasonable and necessary, and Walls was therefore required to have this determined by the Commission before filing any bad faith claim.

II.

¶12. The question presented in this appeal has not been addressed previously by this Court. In *Southern Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55 (Miss. 1984), Holland was injured in October 1977, and had back surgery in December 1977. Farm Bureau paid medical bills and temporary total benefits until July 1979, when it stopped. The Workers' Compensation Commission ordered in September 1981 that Farm Bureau continue temporary total benefits. Holland subsequently filed her bad faith suit.

¶13. In *Luckett v. Mississippi Wood Inc.*, 481 So.2d 288 (Miss. 1985), Luckett was injured in October 1981. Luckett alleged that his employer did not file a notice of his injury with the Workers' Compensation Commission until June or July of 1982, and refused to pay benefits. Luckett filed a motion to controvert in May 1982. The opinion does not say when Luckett filed his bad faith suit.

¶14. In *McCain v. Northwestern National Ins. Co.*, 484 So.2d 1001 (Miss. 1986), McCain alleged that he and the carrier had settled but the carrier had violated the settlement. In *Leathers v. Aetna Cas. & Sur. Co.*, 500 So.2d 451 (Miss. 1986), the dispute over benefits between Leathers and Aetna had been decided in Leathers's favor by the Workers' Compensation Commission, the circuit court and this Court, but Aetna still had not paid.

¶15. In all these cases this Court found that the worker's bad faith suit was a viable cause of action. In none of these case did this Court require that the worker first exhaust administrative remedies under the Workers' Compensation Act, though it appears that this was done in *Holland* and *Leathers*, and may have been done in other cases.

¶16. Franklin cites two federal court cases, *Kitchens v. Liberty Mut. Ins. Co.*, 659 F. Supp. 467 (S.D. Miss. 1987), and *Powers v. Travelers Ins. Co.*, 664 F. Supp. 252 (S.D. Miss. 1987). Both these federal district courts made a guess pursuant to *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that this Court would find that a workers' compensation claimant would first have to establish his entitlement to benefits through the administrative process before pursuing a bad faith suit. Both these cases specifically relied on this Court's decision in *McCain*, 484 So.2d at 1002, where we found, in bad faith cases, that "[a] prerequisite to the award of punitive damages is the determination that the plaintiff is entitled to contractual damages." Both courts found that entitlement to compensation was the same legal issue decided by the administrative fact finder under the Workers' Compensation Act and the trier of fact in a bad faith tort action.

¶17. Walls's bad faith claim is in turn based on the question of whether the whirlpool and shoes are "reasonable and necessary medical services and supplies" as required under the administrative law judge's

1992 order, and as required under Miss. Code Ann. § 71-3-15 (2000). Section 71-3-15 states in part:

(1) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.

. . . .

(3) In carrying out this section, the commission shall establish an appropriate medical provider fee schedule, medical cost containment system and utilization review which incorporates one or more medical review panels to determine the reasonableness of charges and the necessity for the services, and limitations on fees to be charged by medical providers for testimony and copying or completion of records and reports and other provisions which, at the discretion of the commission, are necessary to encompass a complete medical cost containment program. . . . Any dispute over the amount charged for service rendered under the provisions of this chapter, or over the amount of reimbursement for services rendered under the provisions of this chapter, shall be limited to and resolved between the provider and the employer or carrier in accordance with the fee dispute resolution procedures adopted by the commission.

. . . .

¶18. Section 71-3-15 requires that disputes over what is reasonable and necessary should be resolved through the Commission's procedures. Miss. Code Ann. § 71-3-53 (2000) adds that the Commission has continuing jurisdiction to "review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation." Based on this Court's decision in *McCain*, and on the Workers' Compensation Commission's continuing jurisdiction over such cases as provided by statute, we find that Walls could not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the Chickasaw County Circuit Court.

¶19. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.**

**BANKS, P.J., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, P.J., DIAZ AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**