995 So.2d 717 (2008)
Jimmy BULLOCK
v.
AIU INSURANCE COMPANY, The Gottfried Corporation and AIG Claim Services, Inc.
No. 2007-FC-01859-SCT.
Supreme Court of Mississippi.
December 4, 2008.
*718 Lance L. Stevens, Jackson, attorney for appellant.
Rebecca B. Cowan, Edward J. Currie, Jr., William E. McKinley, Jr., Jackson, attorneys for appellees.
EN BANC.

ON MOTION FOR REHEARING
WALLER, Presiding Justice, for the Court.
¶ 1. The motion for rehearing is denied. The original opinions are withdrawn and these opinions are substituted therefor.
¶ 2. This matter is before the Court as a certified question from the United States Court of Appeals for the Fifth Circuit. M.R.A.P. 20. The Court is asked to determine when a decision from an administrative law judge of the Workers' Compensation Commission becomes final for purposes of determining when the statute of limitations begins to run for bringing a tortious breach-of-contract action against an employer, a workers' compensation insurance carrier, and a third-party claims administrator.

STATEMENT OF THE CASE[1]
¶ 3. Plaintiff Jimmy Bullock appeals the district court's final judgment entered July 17, 2006, in which the court granted defendants' motion for summary judgment. The court concluded that the applicable statute of limitations barred Bullock's suit alleging bad faith in the denial of his workers' compensation benefits and dismissed with prejudice all of his claims against all defendants. At issue is whether Bullock's bad-faith cause of action accrued in 1999 when the Mississippi Workers' Compensation Commission administrative law judge issued an order declaring Bullock's injury compensable, or instead, in 2003, when the administrative law judge issued his final order, which was not appealed to the full commission.
¶ 4. The parties agree that Mississippi law is applicable, and that under Mississippi law, a suit such as Bullock's, for bad-faith failure or refusal to pay workers' compensation benefits, may not be filed until the administrative remedies provided by the Mississippi Workers' Compensation Act, Mississippi Code Annotated Sections 71-3-1 to -129 (Rev.2000), and the Mississippi Workers' Compensation Commission are exhausted. Further, they agree that the three-year limitations period prescribed at Mississippi Code Annotated Section 15-1-49(1) (Rev.2003) governs Bullock's bad-faith action, which was filed August 26, 2004 (and subsequently removed by the defendants to the United States District Court for the Southern District of Mississippi on the basis of diversity *719 jurisdiction). Finally, all parties to this appeal concede that if Bullock's administrative remedies were exhausted in November or December 1999 such that he could have brought his bad-faith cause of action at that time, "the bad-faith claim expired before it was filed and the trial court's dismissal must be affirmed."

PROCEEDINGS BEFORE THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION
¶ 5. In November 1996, Bullock was working as a subcontractor in Bay St. Louis, Mississippi, for defendant The Gottfried Corporation, a Louisiana corporation, when he injured both his knees while stepping off a ladder. Bullock filed a claim for workers' compensation benefits with defendant AIU Insurance Company, Gottfried's workers' compensation insurer. A dispute arose over whether Bullock was covered under Gottfried's workers' compensation policy with AIU. Coverage was denied.
¶ 6. On January 9, 1997, Bullock filed a petition to controvert with the Mississippi Workers' Compensation Commission. On October 12, 1999, after conducting a hearing at which (as the October 12 order expressly states) the "only issue" considered was "the threshold issue of whether defendants are liable for payment of workers' compensation benefits under the Act," an administrative law judge entered an order finding that Bullock was an insured and that he was entitled to workers' compensation benefits under the AIU policy. No one appealed the judge's decision finding compensability to the full commission. AIU and defendant AIG Claims Services, Inc., promptly paid all back benefits owed Bullock, and Bullock began receiving and continued to receive workers' compensation benefits.
¶ 7. Thereafter, the issue of temporary and permanent disabilitywhich the parties had agreed to reserve pending a ruling on the issue of coveragewas litigated before the administrative law judge. A final hearing on the merits was scheduled for October 2003. In their pretrial statement, Gottfried and AIU included among "contested issues" the issue of "whether employer and carrier herein are the responsible employer and carrier regarding this claim." Also in their pretrial statement, Gottfried and AIU explained, "The parties have discussed the potential of having a bifurcated hearing in this matter, with the question of whether or not the Gottfried Corp. is the responsible employer being the only issue ... to be decided at the first hearing."
¶ 8. Following a hearing on October 15, 2003, the administrative law judge entered an order on December 1, 2003, declaring Bullock's claim compensable and awarding Bullock additional workers' compensation benefits. On May 25, 2004, the commission approved payment of a commuted, lump-sum payment to Bullock, based on benefits awarded in the order of December 1, 2003.[2]

PROCEEDINGS OF THE BAD-FAITH ACTION
¶ 9. On August 26, 2004, Bullock filed a bad-faith action in the Circuit Court of Hancock County, Mississippi, against Gottfried, AIU, and AIG, asserting a claim for bad-faith refusal to provide workers' compensation benefits. Defendants removed the case based on diversity of citizenship to the United States District Court for the Southern District of Mississippi, Southern *720 Division, on November 18, 2004. 28 U.S.C. § 1332 (West 1993 & Supp.2007).
¶ 10. Gottfried moved to dismiss Bullock's case, contending that the suit was filed after the applicable statute-of-limitations period had elapsed. AIU and AIG joined in Gottfried's motion to dismiss and filed an alternative motion for summary judgment, also based on the statute of limitations. Gottfried, AIU, and AIG argued that the limitations period began on November 1, 1999, or twenty days after the administrative law judge's October 12, 1999, decision in Bullock's favorthe period within which a request or petition for review by the full commission is permissible under Mississippi Code Annotated Section 71-3-47 (Rev.2000). Bullock responded on July 1, 2005, arguing that the limitations period did not start until May 25, 2004, when the commission approved the settlement.
¶ 11. The district court heard oral argument on the motions on February 6, 2006, and denied them after expressing its hesitancy to rule as a matter of law that the statute of limitations had run. On February 16, 2006, the defendants filed a motion to reconsider, arguing that the district court was duty bound under Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to address the statute-of-limitations issue. On February 22, 2006, the district court granted the motion for reconsideration and ordered the parties to file supplemental briefs.
¶ 12. In its opinion and order filed April 28, 2006, the district court concluded that the lawsuit was filed after expiration of the three-year statute of limitations dictated by Mississippi Code Annotated Section 15-1-49(1). Bullock v. AIU Ins. Co., 2006 WL 1195465, 2006 U.S. Dist. Lexis 28764 (S.D. Miss. April 28, 2006), question certified, 503 F.3d 384 (5th Cir.2007). Noting that Bullock's complaint did not allege any actionable conduct after October 12, 1999, and that since October 12, 1999, at the latest, Bullock had been timely paid all compensation benefits to which he was entitled,[3] the court granted the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on its determination that the limitations period on Bullock's bad-faith claim began to run in October 1999 (when the time to appeal the judge's October 12, 1999, order finding Bullock entitled to benefits expired). Id.

QUESTION CERTIFIED[4]
¶ 13. The question certified to this Court is as follows:
(1) Whether an order, issued in 1999, of a Mississippi Workers' Compensation Commission Administrative Law Judge which determines only that the named employer and compensation insurer are liable to the named employee for compensation benefits in respect to a particular on the job accidental injury, but does not determine the amount or duration of benefits to be paid or any other matter, becomes final if not appealed by any party to the commission within twenty days.
(2) If so, whether the employee claimant has then so exhausted his administrative remedies, notwithstanding that the employee's compensation case against the employer and compensation insurer remains pending before the commission on other issues, such that the three-year limitations *721 period under Mississippi Code Section 15-1-49(1) then commences and continues to run with respect to a subsequent suit by the employee against the employer or compensation insurer for bad-faith failure to pay workers' compensation benefits which does not allege any bad-faith action or inaction after the expiration of twenty days following the ALJ's referenced order finding compensability.

DISCUSSION

WHETHER THE ADMINISTRATIVE LAW JUDGE'S OCTOBER 1999 RULING BECAME FINAL WHEN NEITHER PARTY APPEALED THE RULING TO THE COMMISSION WITHIN TWENTY DAYS.
¶ 14. We find that the October 1999 ruling by the administrative law judge was not a final order from which the statute of limitations period began to run for Bullock to file a complaint against the defendants for bad-faith refusal to provide workers' compensation benefits.
¶ 15. Mississippi Code Annotated Section 71-3-47 (Rev.2000), states, in pertinent part, that:
Informal conferences and hearings in contested cases may be conducted by a duly designated representative of the commission. Upon the conclusion of any such hearing, the commission's representative shall make or deny an award, and file the decision in the office of the commission. Immediately after such filing, a notice of decision shall be sent to all interested parties. This decision shall be final unless within twenty (20) days a request or petition for review by the full commission is filed.

Miss.Code Ann. § 71-3-47 (Rev.2000) (emphasis added).
¶ 16. The statute provides that it is the decision to "make or deny an award" which becomes final if a petition for review is not sought within twenty days. Miss.Code Ann. § 71-3-47 (Rev.2000). The question is whether a determination solely on the issue of liabilitywithout deciding the amount of compensationconstitutes an "award."
¶ 17. The term "award" is not defined under Mississippi's workers' compensation law, Miss.Code Ann. § 71-3-3 (Rev.2000), but is used throughout this section of the Mississippi Code. See Miss.Code Ann. §§ 71-3-17(c)(24), (26); 71-3-37(1), (5), (6), (9); 71-3-38; 71-3-49(1), (2); 71-3-51; 71-3-53; 71-3-63; 71-3-67(4); 71-3-75(2); 71-3-89 (Rev.2000). Throughout this section, "award" is associated with the grant of a monetary sum. Id.[5]
*722 ¶ 18. We find that an "award" refers to a final decision to grant or deny a specific amount of compensation. Thus, under Section 71-3-47, it is a decision making or denying compensation, not a determination of liability or entitlement alone, which constitutes an "award." Miss.Code Ann. § 71-3-47 (Rev.2000). Because no "award" was made or denied by the October 1999 order, it did not constitute a final order from which the statute of limitations began to run on Bullock's bad-faith claim.
¶ 19. Our decision is further supported by general principles of administrative law. As a general rule, administrative orders that determine liability but do not decide damages are not considered final for the purpose of judicial review. See e.g., Carter/Mondale Pres. Comm'n. v. Fed. Election Comm'n, 711 F.2d 279, 281-87 (D.C.Cir.1983) (The Federal Election Commission's "final determination" allowed for a potential reduction of damages. It was held that a final agency action, subject to judicial review, did not occur until after the Commission sent notice of its final adjustments.); Newport News Shipbuilding v. Dir., Office of Workers' Comp. Programs, 590 F.2d 1267, 1268 (4th Cir.1978) (no final agency decision where administrative law judge vacated a portion of the award and remanded for further proceedings); United Fruit Co. v. Dir., Office of Workers' Comp. Programs, 546 F.2d 1224, 1225 (5th Cir.1977) (no final order where administrative board determined liability, but remanded to administrative law judge to determine nature and extent of liability); Sun Shipbuilding & Dry Dock Co. v. Benefits Review Bd., 535 F.2d 758, 760-761 (3rd Cir.1976) (no final order where administrative board affirmed on liability, but remanded for a redetermination on amount of damages). In determining the finality of administrative decisionmaking for the purposes of judicial review, "the relevant considerations . . . are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 210, 27 L.Ed.2d 203, 209 (1970) (citing ICC v. Atlantic Coast Line R.R. Co., 383 U.S. 576, 602, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966)).
¶ 20. The October 1999 order indicates that a final determination on the amount of compensation due Bullock remained pending before the administrative law judge. The order stated that:
The parties agreed to litigate only the threshold issue of whether defendants are liable for payment of workers' compensation benefits under the Act and to reserve the issue of temporary and permanent disability pending a ruling on the issue of coverage. . . . The only issue to be litigated at this time is whether the defendants are liable for payment of the workers' compensation benefits under the Act.
The issue of liability or compensability was simply the threshold issue, with a *723 determination of the amount reserved for a later ruling. See John R. Bradley & Linda A. Thompson, Mississippi Workers' Compensation, 8:8 (Thomson/West 2007) ("In the administration of workers' compensation claims, disputes arise at different stages of the administrative process and parties resort to the quasi-judicial functions of the commission at various times. [For example,] [t]here may be a hearing on the compensability of a claim. . . . Piecemeal appeals, if granted routinely, could become a strategic ploy for employers to starve out impecunious workers."). While the defendants voluntarily began paying benefits after the October 1999 order, a final decision on the amount owed to Bullock had not been reached. We find that the October 1999 order was interlocutory. This Court has stated that "[a]n order is interlocutory when `the substantial rights of the parties involved in the action remain undetermined and when the cause is retained for further action.'" Blankenship v. Delta Pride Catfish, 676 So.2d 914, 917 (Miss. 1996) (quoting Freeman Truck Line, Inc. v. Merchants Truck Line, Inc., 604 So.2d 223, 224 (Miss.1992)). The rights that remained undetermined following the October 1999 order concerned a monetary interest, which this Court considers a substantial right. State Highway Comm'n of Miss. v. Hyman, 592 So.2d 952, 957 (Miss.1991); Miss. Mun. Liab. Plan v. Jordan, 863 So.2d 934, 941 (Miss. 2003). Because Bullock had substantial rights that remained undeterminedand were specifically reserved for later actionwe construe the order to be interlocutory. See Blankenship, 676 So.2d at 918.
¶ 21. We recognize that our precedent requires only a determination that a plaintiff is "entitled" to compensation before a bad-faith action may be brought. Walls v. Franklin Corp., 797 So.2d 973 (Miss.2001); McCain v. Northwestern Nat'l Ins., 484 So.2d 1001, 1002 (Miss.1986) ("[a] prerequisite to the award of punitive damage is the determination that the plaintiff is entitled to contractual damages"); Dial v. The Hartford Accident and Indem. Co., 863 F.2d 15, 17 (5th Cir.1989) ("[The plaintiff] must exhaust the administrative remedy provided and establish his entitlement to workers' compensation benefits in that process prior to commencing a court action for tort damages for the same failure to pay his claim."); Miss. Power & Light, Co. v. Cook, 832 So.2d 474, 480 (Miss.2002) ("Really the only test set out [for damages for bad faith] is whether the injury is compensable. . . ."). We affirm these decisions, but emphasize that a determination of entitlement must be final. Because the October 1999 order did not make or deny an award and was interlocutory, it did not constitute a final order from which the statute of limitations commenced to run.

CONCLUSION
¶ 22. The first part of the certified question from the Fifth Circuit Court of Appeals is answered in the negative. The administrative law judge's order of 1999, which determined only that the named employer and compensation insurer were liable to the named employee for compensation benefits with respect to a particular on-the-job accidental injury was interlocutory under the facts of this case. Since the second part of the question is conditioned upon an affirmative answer to the first, we do not address it.
¶ 23. CERTIFIED QUESTION ANSWERED.
DIAZ, P.J., EASLEY, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR. CARLSON, J., DISSENTS *724 WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., AND DICKINSON, J.
CARLSON, Justice, Dissenting.
¶ 24. Because I disagree with the majority's conclusion as to when the statute of limitations begins to run for bringing a tortious breach-of-contract action against an employer, a workers' compensation insurance carrier, and a third-party claims administrator, I must respectfully dissent.
¶ 25. In my discussion of the critical issue before the Court, I will reiterate only so much of the facts and procedural history of this case as is necessary to adequately address my concerns. As pointed out by the majority, in November of 1996, Bullock was injured on the job when he injured both knees while stepping off a ladder, and Bullock filed a claim for workers' compensation benefits with AIU Insurance Company, Gottfried's workers' compensation insurance carrier. A dispute arose concerning whether Bullock was covered under the AIU policy, and coverage was denied; therefore, Bullock filed a petition to controvert with the Mississippi Workers' Compensation Commission. After conducting a hearing, an administrative law judge entered an order on October 12, 1999, finding that Bullock was an insured and thus entitled to benefits under the AIU policy. No one appealed this order to the full commission. Bullock thereafter began to receive workers' compensation benefits, and Bullock was also paid accrued benefits from the date of his injury until the date of the ALJ's determination of workers' compensation eligibility.
¶ 26. Likewise, as correctly noted by the majority, the administrative law judge in due course conducted a final hearing. Subsequent to this hearing, the administrative law judge entered an order finding Bullock's claim to be compensable and awarding additional benefits to Bullock. On May 25, 2004, the commission approved a commuted lump-sum settlement in favor of Bullock. Once this case was removed to federal court, Judge Guirola granted the defendants' motion for summary judgment, finding that the applicable statute of limitations began to run from the date of entry of the ALJ's order of October 12, 1999[6] adjudicating that Bullock was entitled to benefits under Gottfried's workers' compensation policy (or at least no later than the date on which this order became final pursuant to Mississippi Code Annotated Section 71-3-47 (Rev.2000)). Bullock, 2006 WL 1195465 at *3, 2006 U.S. Dist. LEXIS 28764, *8-10 (S.D. Miss. April 28, 2006).
¶ 27. Today's record reveals that the issue of whether Gottfried and AIU were liable for payment of workers' compensation benefits to Bullock for his injuries of November 8, 1996, was hotly contested at the 1999 hearing before the administrative law judge. There was disputed testimony as to whether Bullock was a subcontractor or an employee in relation to his work with Gottfried. Karl Gottfried, III, Vice-President of the Gottfried Corporation, likewise claimed that he did not know that Bullock's workers' compensation insurance had lapsed until after Bullock's accident, while Bullock testified that he told Karl Gottfried, III, that he had delayed signing the subcontract for the project (on which Bullock *725 was eventually injured) because his workers' compensation insurance had lapsed due to non-payment of premiums.
¶ 28. Of significant import is the language contained in the ALJ's order of October 12, 1999, making specific findings of fact from disputed testimony:
The Gottfried Corporation is estopped to deny [Bullock] workers' compensation benefits to [Bullock] for the injury he sustained on November 8, 1996. In so holding, this Administrative Judge notes that a convincing argument could be made that [Bullock] was an employee and not a subcontractor of the Gottfried Corporation. The parties' relationship was perpetuated by a series of short-term contracts for the performance of work previously provided in house by the corporation's employees. Also, [Bullock]'s financial ability to sustain an independent business is questionable considering his continued incapacity to secure workers' compensation and general liability coverage and his inability to buy materials without assistance from the Gottfried Corporation. Moreover, none of the other facts regarding the parties' relationship  under either the control or relative nature of the work tests  is fatal to a finding that [Bullock] was employed by the Gottfried Corporation on the date of injury.
However, assuming that the parties' characterization of themselves as general contractor and subcontractor is correct, the Gottfried Corporation is nevertheless liable for payment of workers' compensation benefits to [Bullock], as a preponderance of the credible evidence indicates that (1) [Bullock] did not execute the contract until more than three months after its preparation because he did not have workers' compensation insurance as required by the contract; (2) [Bullock] signed the contract only after Karl Gottfried, III, assured him that the corporation would deduct the cost of workers' compensation coverage from his payment; (3) the contract provided for such deduction on its face; (4) the corporation in fact deducted the cost of coverage from [Bullock]'s payment under the contract; and (5) the corporation had previously deducted the cost of coverage on three other contracts with [Bullock] for work on the same job site. See Section 71-3-79 and Champion Cable Const. Co. v. Monts, 511 So.2d 924 (Miss. 1987) (general contractor estopped to deny coverage to subcontractor where the general contractor agreed to secure coverage for the work crew and the carrier accepted premiums on the policy).
. . . .
Thus, this Administrative Judge concludes that the Gottfried Corporation is estopped from denying workers' compensation coverage to [Bullock] for the injury he sustained on November 8, 1996.
¶ 29. It is my opinion that Judge Guirola's "Erie-guess" was eminently correct. In his Memorandum Opinion, Judge Guirola stated, inter alia:
The question before the Court is: When did the statute of limitations on Bullock's bad faith claim begin to run? Defendants argue that it began to run on the date Bullock was first denied benefits. Alternatively, Defendants argue that the statute of limitations began to run after the ALJ determined that Bullock was eligible for workers' compensation benefits. In response, Plaintiff contends that the statute of limitations did not begin to run until May 25, 2004, when an order approving a commuted lump-sum settlement was entered by the Mississippi Workers' Compensation Commission and the *726 file was closed. Plaintiff argues that prior court rulings prevent the filing of a bad faith claim for refusal to pay workers' compensation benefits until the plaintiff has "exhausted his administrative remedies." See, e.g., Whitehead [v. Zurich Am. Ins. Co., 348 F.3d 478,] 481 [(5th Cir.2003)] ("The Mississippi Supreme Court, however, has required the exhaustion of the administrative remedial process before an intentional tort claim against a carrier can be brought."); Dial [v. Hartford Accident and Indem. Co.], 863 F.2d [15,] 16 [(5th Cir.1989)] ("Dial must exhaust the administrative remedy provided and establish his entitlement to workers' compensation benefits in that process prior to commencing a court action for tort damages for the same failure to pay his claim."); Butler v. Nationwide Mut. Ins. Co., 712 F.Supp. 528, 530 (S.D.Miss.1989) ("a bad faith action should not proceed prior to a final adjudication of the underlying workers' compensation claim in accordance with the administrative procedures provided by the Mississippi Workers' Compensation Act.") According to Plaintiff, "exhaustion of administrative remedies" means that the workers' compensation process must be concluded before a claim of bad faith may be brought against the employer. Thus, Plaintiff argues that his complaint is timely since the three year statute of limitations did not begin to run until May 25, 2004.
It is undisputed that the Plaintiff's entitlement to workers' compensation benefits was decided in his favor on October 12, 1999. The ALJ issued the order and no appeal was taken. Thus, the ALJ's determination that Bullock was eligible for benefits became a final order. See MISS CODE ANN. § 71-3-47; Staples v. Blue Cross and Blue Shield of Miss., Inc., 585 So.2d 747, 748 (Miss.1991) ("It is well established that, if a petition for review of an ALJ's order is not filed within twenty days, further action is barred."). It is also undisputed that the gravamen of Plaintiff's bad faith claim is the failure of the Defendants to provide benefits prior to the ALJ's determination of eligibility. Bullock's complaint does not allege any actionable conduct on the part of Defendants after October 12, 1999.
Bullock's argument is unpersuasive. Requiring all potential bad faith claimants to wait until their workers' compensation cases are finally concluded is not currently supported by Mississippi case law or statute. In the context of "exhaustion of administrative remedies" prior to the filing of a bad faith claim, the Mississippi Supreme Court has never equated exhaustion of remedies with exhaustion of the workers' compensation process. Instead, exhaustion occurs upon the final adjudication of the underlying workers' compensation issue that establishes the plaintiff's "entitlement to contractual damages." Indeed, there may be circumstances in which claimants must await final adjudication of their workers' compensation case before a disputed issue ripens into a cognizable bad faith case. In this case, however, the issue of Bullock's entitlement to workers' compensation benefits was "exhausted" when the Mississippi Workers' Compensation Commission conclusively determined through its administrative process that Bullock was entitled to the workers' compensation benefits that had been previously denied. Thus, the statute of limitations began to run on Bullock's bad faith claim on October 12, 1999.
Bullock, 2006 WL 1195465 at **2-3, 2006 U.S. Dist. LEXIS 28764 at **5-8 (footnote omitted) (emphasis in original).
*727 ¶ 30. I would adopt in toto Judge Guirola's reasoning in finding that the ALJ order of October 12, 1999, was an appealable order on the pivotal issue of liability and thus became final after the time for appeal as provided by Mississippi Code Annotated Section 71-3-47 (Rev.2000) had expired, and that Bullock had then so exhausted his administrative remedies for the purposes of pursuing his bad-faith claim, thus causing the limitations period provided under Mississippi Code Annotated Section 15-1-49(1) (Rev.2003) to commence running upon the expiration of the twenty-day period prescribed in Section 71-3-47.
¶ 31. As of the entry of the ALJ order of October 12, 1999, Bullock knew that the ALJ had decided in his favor the hotly contested issue of liability on the part of Gottfried and AIU, and that up until October 12, 1999, Gottfried and AIU had denied liability and refused to pay him workers' compensation benefits. As noted by Judge Guirola, Bullock's bad-faith complaint does not allege any actionable conduct on the part of Gottfried and AIU after October 12, 1999. Judge Guirola correctly noted that "the issue of Bullock's entitlement to workers' compensation benefits was `exhausted' when the Mississippi Workers' Compensation Commission conclusively determined through its administrative process that Bullock was entitled to the workers' compensation benefits that had been previously denied." Bullock, 2006 WL 1195465 at *3, 2006 U.S. Dist. LEXIS 28764 at *8. (See, e.g., Joiner Ins. Agency v. Principal Cas. Ins., 684 So.2d 1242, 1244 (Miss.1996) ("termination element of a malicious prosecution claim does not require an appealable judgment or a dismissal `with prejudice'")).[7] I also agree with Judge Guirola that "there may be circumstances in which claimants must await final adjudication of their workers' compensation case before a disputed issue ripens into a cognizable bad faith case." Id. However, in my opinion, the record before us clearly reveals that Bullock's case is not such a case.
¶ 32. Therefore, for the reasons stated, I respectfully dissent.
SMITH, C.J., AND DICKINSON, J., JOIN THIS OPINION.
NOTES
[1] The Statement of Case is taken largely from the order certifying the question to this Court. Emphasis and footnotes have been omitted.
[2] This act is an administrative event, not a substantive act with regard to a claim before the commission. See Miss.Code Ann. § 71-3-29 (Rev.2000).
[3] We note that the carrier and employer voluntarily paid these benefits. Nothing in the order of the administrative law judge from October 1999 set the amount of benefits or ordered the carrier and employer to pay any amount for any period of time.
[4] We split the question into two parts. The language is a direct quote from the order.
[5] Miss.Code Ann. §§ 71-3-17(c)(24) (Rev. 2000) ("The commission, in its discretion, is authorized to award proper and equitable compensation. . . . No such award shall be made until. . . ."); (26) ("the award of compensation"); 71-3-37(1) (Compensation is to be paid promptly and directly, "without an award except where liability to pay compensation is controverted by the employer."), (5) ("installment of compensation payable without an award"), (6) ("installment payable under the terms of an award"), (9) ("[The Commission] may require any self-insurer to make a deposit with the State Treasurer to secure prompt and convenient payment of such compensation; and payments therefrom upon any awards shall be made upon order of the commission."); 71-3-38 ("[T]he state highway commission is authorized . . . to pay such awards as may be entered and such other costs, expenses and benefits as may be incidental to the settlement of such workmen's compensation claims."); 71-3-49(1) ("compensation due under an award") ("where [the employer] fails to deposit with the commission the amount of the award") ("the commission may declare the entire award due") ("The court shall vacate or modify such judgment to conform to any later award or decision of the commission. . . .") ("The award may be so compromised by the commission as in its discretion may best serve the interest of the persons entitled to receive the compensation or benefits."), (2) ("any compensation due under an award"); 71-3-51 ("award of compensation"); 71-3-53 ("an award increasing the compensation rate"); 71-3-63 ("award for compensation" or "award of compensation"); 71-3-67(4) ("[A] sum not to exceed One Hundred Dollars ($ 100.00) may, in the discretion of an administrative judge or the commission, be added to any award. . . ."); 71-3-75(2) ("[T]he commission may, at any time either before or after the entry of an award . . . require the sureties to pay the amount of the award. . . ."); 71-3-89 ("The commission shall have a seal for authentication of its orders, awards, and proceedings. . . .").
[6] En route to making this determination, Judge Guirola stated, inter alia, that "[i]t is also undisputed that the gravamen of Plaintiff's bad faith claim is the failure of the Defendants to provide benefits prior to the ALJ's determination of eligibility. Bullock's complaint does not allege any actionable conduct on the part of Defendants after October 12, 1999." Bullock, 2006 WL 1195465 at **2-3, 2006 U.S. Dist. LEXIS 28764, *7 (S.D. Miss. April 27, 2006).
[7] One of the elements of proof in a malicious prosecution claim is "the termination of such [underlying] proceeding in plaintiff's favor." Joiner, 684 So.2d at 1244 (citing Page v. Wiggins, 595 So.2d 1291, 1293 (Miss. 1992)).