# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00524-COA

**CINDY WALLS**                                                              **APPELLANT**

**v.**

**FRANKLIN CORPORATION AND EMPLOYERS**                     **APPELLEES**
**INSURANCE OF WAUSAU**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2013 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY O. PARKER JR. |
| ATTORNEYS FOR APPELLEES: | CLIFFORD KAVANAUGH BAILEY III RUSSELL LATINO III |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| TRIAL COURT DISPOSITION: | DISMISSED BAD-FAITH CLAIM AGAINST THE EMPLOYER BY DIRECTED VERDICT AND DISMISSED BAD-FAITH CLAIM AGAINST THE CARRIER BASED ON JURY VERDICT IN CARRIER'S FAVOR |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/05/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     In an earlier appeal, the Mississippi Supreme Court held that Cindy Walls "could not *maintain a bad faith action* for refusal to pay for disputed medical services and supplies absent the [Mississippi Workers' Compensation] Commission's prior determination that

those services and supplies were reasonable and necessary."[1]  The circuit judge interpreted this to mean Walls's second bad-faith lawsuit—filed after she obtained the required determination by the Commission—must be strictly limited to only those actions the employer and carrier took *after* Walls had exhausted her administrative remedies in April 2002.  But our review of *Walls I* and later decisions applying it shows this view was too restrictive.

¶2.     *Walls I* does not say an employer or carrier cannot act in bad faith before an employee exhausts her administrative remedies at the Commission.  Rather, it says an employee cannot "maintain," that is, *cannot file* "a bad faith action" prior to exhausting her administrative remedies.[2]  So while a final Commission order is a requirement for an employee to file a bad-faith lawsuit, it is not a prerequisite for a carrier to act in bad faith.  Therefore, it was error to exclude all evidence of the employer's and insurance carrier's actions before April 2002.

¶3.     This error was harmless as far as the employer, Franklin Corporation, is concerned.  Walls concedes she has absolutely no evidence her employer acted in bad faith, even before April 2002.  But this error was reversible as to the insurance carrier, Employers Insurance of Wausau, since Walls's bad-faith claim centered on Wausau's alleged bad-faith conduct prior to April 2002.

¶4.     We affirm the judgment dismissing the bad-faith claim against Franklin.  But we must reverse the judgment dismissing the bad-faith claim against Wausau and remand this claim

---

[1] *Walls v. Franklin Corp. (Walls I)*, 797 So. 2d 973, 977 (¶18) (Miss. 2001) (emphasis added).

[2] *Id.*

for a new trial.

**Background Facts and Procedural History**

## I. First Lawsuit: *Walls I*

¶5.     To understand this case, one must go back three decades to 1984. That is when Walls injured her back while working for Franklin. She filed a workers' compensation claim. And in 1992, the administrative judge (AJ) ordered Franklin's insurance carrier, Wausau, to pay for Walls's injury-related medical treatment. For several years, Wausau did pay her. Walls would submit her medical costs to Wausau, and Wausau would reimburse her.

¶6.     But there were two particular expenses Wausau refused to reimburse—(1) the cost of Nike Air shoes she claims she was prescribed, and (2) the cost of a whirlpool bath. She had the bath installed in her home after her doctor prescribed that she take whirlpool baths several times a week. Because these expenses were not paid, in 1997, Walls sued Franklin and Wausau in the Chickasaw County Circuit Court for bad-faith refusal to pay medical benefits. *Walls v. Franklin Corp.* (*Walls I*), 797 So. 2d 973, 975 (¶8) (Miss. 2001).

¶7.     While that action was pending, Franklin and Wausau filed a motion with the Mississippi Workers' Compensation Commission. They asked the Commission to decide if the two medical expenses were reasonable and necessary. But the Commission opted to hold off answering until the circuit-court matter was resolved. *Id.*

¶8.     The circuit court, however, eyeing the unresolved question in the Commission about whether the expenses were reasonable and necessary, dismissed Walls's bad-faith action for failure to first exhaust her administrative remedies. *Id.* at (¶9). And the Mississippi Supreme

3

Court affirmed the dismissal.

¶9. In doing so, the high court noted Walls's particular bad-faith claim hinged on whether the shoes and whirlpool bath were "reasonable and necessary medical services and supplies," which Franklin and Wausau were required to pay, not only under the AJ's 1992 order, but also by statute. *Id.* at 976 (¶17) (citing Miss. Code Ann. § 71-3-15 (Rev. 2000)). The supreme court looked to section 71-3-15 of the Workers' Compensation Law, which "requires that disputes over what is reasonable and necessary should be resolved through the Commission's procedures." *Walls I*, 797 So. 2d at 976 (¶18). It also considered section 71-3-53, which "adds that the Commission has continuing jurisdiction to 'review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.'" *Walls I*, 797 So. 2d at 976 (¶18) (quoting Miss. Code Ann. § 71-3-53 (Rev. 2000)). Based on these two statutes, as well as the court's precedent, the supreme court determined "Walls could not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's *prior determination* that those services and supplies were reasonable and necessary." *Id.* at 977 (¶18) (emphasis added).

¶10. With that case finally resolved, the Commission took up Franklin and Wausau's motion to determine if the expenses for the shoes and whirlpool bath were reasonable and necessary. The AJ determined they were. And in April 2002, he ordered Franklin and Wausau "to pay for the shoes, the whirlpool bath, and any other unpaid medical expenses in this matter."

## II. Present Lawsuit

### A. 2002 Complaint

¶11. Three months later, in July 2002, Walls again sued Franklin and Wausau. In her second action, Walls claimed Franklin and Wausau had acted in bad faith by not paying the expenses of the shoes and whirlpool bath in a reasonable time. Her complaint sought $2,433.18—the cost of the shoes and bath—in compensatory damages. It also prayed for an unspecified amount of punitive damages.

¶12. Around seven months later, in February 2003, Wausau finally reimbursed Walls for the shoes and bath.

### B. 2008 Amended Complaint

¶13. After lying dormant,[3] this case heated up again in January 2008 when Walls amended her complaint. The changes to her complaint were substantial. The original complaint based the bad-faith claim on the delayed payment for the shoes and whirlpool bath, which Wausau had been ordered to pay in 2002. But the foundation for the amended complaint was far more expansive in scope and time.[4] Reaching all the way back to 1992, the second amended complaint chronicled two decades worth of allegedly unpaid medical expenses and bad-faith actions by Wausau. Walls's claim for actual damages soared to $600,000. And she requested $5.4 million in punitive damages, as well as $100,000 in attorney's fees.

---

[3] In July 2006, all record action had ceased. After more than a year had passed, the circuit clerk, in October 2007, moved to dismiss for failure to prosecute. *See* M.R.C.P. 41(d). Walls took the necessary record action, and her lawsuit was permitted to proceed.

[4] Walls had actually amended her complaint once before. The allegations and prayer for relief in her first amended complaint were very similar to her original complaint.

5

### C. Trial Court's Three Rulings

¶14. Walls's amended complaint prompted three rulings relevant to this appeal.

#### 1. Motion for Partial Summary Judgment

¶15. The first ruling was the trial court's grant of Franklin and Wausau's motion for partial summary judgment. Franklin and Wausau challenged the viability of Walls's new claims. They asserted all of Walls's additional claimed expenses—save one submitted in 2009—had been incurred over a decade earlier. Thus, these claims were barred by the statute of limitations. Further, Walls had failed to exhaust her administrative remedies for the 2009 expense. The trial court agreed and granted Franklin and Walls's request to dismiss "all claims other than those relating to the tennis shoes and whirlpool bath addressed in the AJ's 2002 order."

#### 2. Motion in Limine

¶16. The next ruling was the trial court's grant of Franklin and Wausau's motion in limine. Walls's counsel still wanted to put on expansive evidence of Wausau's actions from 1992 to present day. In response, Franklin and Wausau filed a motion in limine aimed at keeping Walls from mentioning the dismissed claims. While Walls claimed this evidence was admissible under Mississippi Rule of Evidence 406 to establish "habit" or "routine practice," Franklin and Walls argued Rule 406 could not be used to backdoor procedurally barred claims. The trial court agreed with Franklin and Walls. Admitting evidence of Wausau's actions under the guise of "habit" evidence could create a high risk of confusion that was likely not curable with a limiting instruction. While the judge admitted the time-barred

claims had "some probative value," he found "the risk was great" that any value would "be outweighed by unfair prejudice to allow proof of [what the judge had already decided] are time-barred claims." So the court ordered "that evidence of claims other than those relating to the tennis shoes and whirlpool bath addressed in the AJ's April 2002 Order should be excluded at the trial of this matter."

### 3.     Clarification of Evidentiary Ruling

¶17.    The last significant ruling was the trial court's "clarification" of this evidentiary ruling.

¶18.    On the eve of trial—finally scheduled for August 2010—confusion erupted over the scope of the granted motion in limine. Both sides agreed the granted motion for partial summary judgment and related motion in limine confined Walls's claims to the shoes and whirlpool bath. But the two factions had decidedly different views of what the remaining claims entailed, in light of the supreme court's ruling in *Walls I*.

¶19.    According to Franklin and Wausau, the upshot of *Walls I* was that Walls's bad-faith claim did not *begin* until Walls exhausted her administrative remedies in April 2002. Thus, as Franklin and Wausau pitched it, anything that happened before April 2002, though relevant, could not form the basis for Walls's current bad-faith claim. So they wanted evidence of those refusals excluded. They felt the only question at issue was if Wausau's ten-month delay between the AJ's April 2002 order to pay and Wausau's later payment of $2,433.18 amounted to the independent tort of bad faith.

¶20.    Walls vehemently disagreed with this interpretation. She argued *Walls I* merely held

7

that she could not "maintain a bad faith action" until she exhausted her administrative remedies. *Walls I*, 797 So. 2d at 977 (¶18). So what really began in April 2002 was her ability to *file* a bad-faith action—not the underlying claim itself. Walls argued Wausau's actions between the 1992 AJ order awarding her medical benefits and the 2002 AJ order to pay for the shoes, the bath, and any unpaid medical services was not just the relevant backstory—it was the *heart* of her bad-faith claim.

¶21. Though reluctant to draw a bright evidentiary line, the trial court ultimately sided with Franklin and Wausau's view. The judge reasoned that—since the supreme court affirmed the dismissal of Walls's first action for failure to exhaust administrative remedies—"the life of this case" began the day Walls exhausted her administrative remedies. The court entered a "clarification" of its previous order granting the motion in limine. This clarification was unequivocal that "[n]o evidence of acts by [Franklin and Wausau] prior to [April 2002] may be considered as a tort or as part of the tort of bad faith in this case."

### D. Trial and Verdict

¶22. Trial finally commenced in January 2013.[5] The evidence was strictly limited to Wausau's ten-month delay in payment following the April 2002 AJ order. Even the AJ order itself was not introduced in full, as it contained the AJ's discussion of pre-2002 events. At the close of the evidence, the judge granted Franklin's motion for a directed verdict. The jury was instructed to deliberate whether the remaining defendant, Wausau, had acted in bad

---

[5] The previously scheduled trial had been postponed to permit Walls to file an interlocutory appeal. But because Walls had appealed the judge's months-later clarification order and not the underlying order containing the initial evidentiary ruling, the supreme court dismissed Walls's interlocutory appeal as untimely.

faith by delaying payment for the shoes and whirlpool bath between April 2002 and February 2003. The jury found in Wausau's favor, and Walls's action was dismissed with prejudice. Following the denial of her post-trial motions, Walls timely appealed.

**Discussion**

¶23.   On appeal, we focus on the third ruling—the "clarification" that excluded any evidence of events before the April 2002 AJ order, including the evidence the AJ considered in his order. Generally, we defer to a trial court's evidentiary rulings. *Ware v. Entergy Miss., Inc.*, 887 So. 2d 763, 766 (¶6) (Miss. 2003). But this ruling rested on a question of law—What effect did *Walls I* have on Walls's ability to litigate her bad-faith claim? And we review questions of law de novo. *Ware*, 887 So. 2d at 766 (¶6).

### I.    Effect of *Walls I*

¶24.   Our de novo review leads us to the critical question of how to interpret the holding of *Walls I*. What did the supreme court mean when it held "Walls could not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary"? *Walls I*, 979 So. 2d at 977 (¶18). Was the court saying Wausau *could not have acted* in bad faith in how it handled Walls's claim for the shoes and bath unless and until the Commission ruled these items were reasonable and necessary medical expenses? Or was the court ruling that Walls *could not sue* based on how Wausau handled her claims for these items unless and until she had obtained a declaration from the Commission that these items were reasonable and necessary medical expenses?

9

¶25. According to Franklin and Wausau, the supreme court meant the former. They insist there was no duty to reimburse Walls until the AJ ordered them to do so. So there could not be any bad-faith conduct before April 2002. But after careful review, we disagree. Instead, we find Wausau's duty to pay arose under its contract with Franklin and controlling workers' compensation statutes. And what the AJ's order did was merely *confirm* Wausau's duty to pay these expenses—not "*create*" its duty to pay these expenses.

¶26. In discussing the then newly recognized independent tort for bad-faith denial of workers' compensation benefits, the supreme court held that "[t]he same rules applicable to health, fire, casualty, accident, and other insurance policies are likewise applicable to workers' compensation insurance carriers." *McCain v. Nw. Nat'l Ins.*, 484 So. 2d 1001, 1002 (Miss. 1986). As with any other dispute over insurance coverage, a carrier may be liable for punitive damages for its actions taken *before* a final adjudication of the underlying coverage dispute. So to say Franklin and Wausau *could not have acted* in bad faith at any time before Walls exhausted her administrative remedies stretches *Walls I* too far.

¶27. We instead understand *Walls I* to mean just what the supreme court said—that Walls could not "maintain," that is, *could not file* "a bad-faith action" prior to exhausting her administrative remedies. *Walls I*, 797 So. 2d at 977 (¶18). So in short, a final AJ order is a prerequisite for an employee to file a bad-faith lawsuit, not a prerequisite for a carrier to act in bad faith.

## II. Intervening Opinions

¶28. Our position is reinforced by how the supreme court and the Fifth Circuit have used

*Walls I* in two intervening opinions. *See Patrick v. Wal-Mart, Inc.–Store No. 155*, 681 F.3d 614, 619-20 (5th Cir. 2012)*; Bullock v. AIU Ins.*, 995 So. 2d 717, 723 (¶21) (Miss. 2008). In both *Patrick* and *Bullock*, all the alleged bad-faith conduct occurred *before* the administrative remedies were exhausted.[6] *Patrick*, 681 F.3d at 616-18; *Bullock*, 995 So. 2d at 719 (¶6). And in both, exhaustion of remedies was seen as the *last* necessary event before a bad-faith claim could be filed—not the first necessary event before an employer or carrier could have acted in bad faith. *Patrick*, 681 F.3d at 618-21; *Bullock*, 995 So. 2d at 722-23 (¶¶18-21). Put a bit differently, since *Walls I*, the exhaustion of administrative remedies has been viewed as the *culmination* of an actionable bad-faith claim, not its inception.

### III.    Question *Walls I* Resolved

¶29.    Statutory workers' compensation benefits are the exclusive remedy for on-the-job injuries.[7] But this "exclusive remedy provision does not bar [filing] a common law tort action against an insurance carrier if the carrier commits an intentional tort independent of the compensable accident." *AmFed Cos. v. Jordan*, 34 So. 3d 1177, 1183 (¶21) (Miss. Ct. App. 2009) (citations omitted).

¶30.    The elements of this action are: (1) an insurance contract between the employer and

---

[6] In fact, in *Patrick*, Judge Leslie H. Southwick, writing for the Fifth Circuit, framed the question presented as: Once the AJ awarded temporary benefits and the time to challenge that award passed, "did the three-year period begin in which to bring a civil suit alleging the *prior bad faith denial* of those benefits"? *Patrick*, 681 F.3d at 618 (emphasis added).

[7] To use more precise language, workers' compensation exclusively covers "disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease." Miss. Code Ann. § 71-3-7 (Supp. 2014); *see also* Miss. Code Ann. § 71-3-9 (Rev. 2011).

carrier, (2) the carrier's denial of a compensable claim without an arguable or legitimate reason, and (3) the denial of which rises to the level of an independent tort. *Id.* at (¶22). So in order for a there to be bad faith, there must be a "compensable claim." *See McCain*, 484 So. 2d at 1002 ("A prerequisite to the award of punitive damage is the determination that the plaintiff is entitled to contractual damages."). The question raised in *Walls I* was who gets to decide an employer's claim was compensable—a circuit-court jury or the Commission?

¶31.    Even before our supreme court reached this question in *Walls I*, federal district courts in Mississippi had been answering that, since the Commission "is vested [with] exclusive jurisdiction of claims for benefits," it must be the Commission that determines that a claim is compensable. *Powers v. Travelers Ins.*, 664 F. Supp. 252, 254 (S.D. Miss. 1987); *see also Kitchens v. Liberty Mut. Ins.*, 659 F. Supp. 467, 469 (S.D. Miss. 1987). Those courts, therefore, required a plaintiff first exhaust her administrative remedies with the Commission before pursuing a bad-faith claim. *Id.* Otherwise, it would be "frighteningly conceivable" that a jury could find the employer's claim was compensable and award punitive damages for bad-faith conduct, even though the Commission—vested with exclusive jurisdiction—later found the claim was not compensable. *Kitchens*, 659 F. Supp. at 469.

¶32.    *Walls I* put any such fears to rest. Because the Commission had exclusive and "continuing jurisdiction to review a compensation case," the Commission, not the circuit-court jury, had to first decide if Walls's claims for the shoes and bath were reasonable and necessary medical expenses. *Walls I*, 797 So. 2d at 976 (¶18). If the Commission determined they were, then Walls could try the remaining issues—including whether Wausau

had a legitimate reason to deny reimbursement—in circuit court. It is certainly possible Wausau may have had very good reason why it disputed these expenses before April 2002, but that was a jury question.

¶33. Put simply, the requirement to exhaust administrative remedies before filing a lawsuit for bad faith ensures the proper body—the Commission—adjudicates whether the claimed medical expense was reasonable and necessary. *Id.* It also marks when the statute of limitations begins to run. *Patrick*, 681 F.3d at 620; *Bullock*, 995 So. 2d at 723 (¶21). But this requirement does not deem, as a matter of law, that a carrier's conduct *prior to* the exhaustion of administrative remedies cannot form the basis for a bad-faith lawsuit.

### IV. Effect of This Ruling

¶34. For this reason, we find the judge erred by strictly limiting Walls's evidence, and thus Walls's bad-faith action, to how Franklin and Wausau handled her claims for the shoes and bath *after* the AJ's April 2002 order. To be clear, we do not disturb the trial court's first ruling. Walls has not appealed the order granting partial summary judgment, which dismissed all other bad-faith claims not based on the shoes or tub as procedurally barred by either the running of the statute of limitation or not exhausting administrative remedies. So in remanding this case back to the trial court, we leave this ruling intact. Rather, our decision to reverse and remand is based on the trial judge's evidentiary rulings.

¶35. "For a case to be reversed based on the admission or exclusion of evidence, a party must be actually prejudiced, harmed, or have a substantial right adversely affected." *Ill. Cent. R.R. v. Brent*, 133 So. 3d 760, 779 (¶42) (Miss. 2013) (citing *Bower v. Bower*, 758 So.

13

2d 405, 413 (¶38) (Miss. 2000)). Walls has conceded that she has no evidence her employer, Franklin, acted in bad faith before April 2002. So Walls suffered no actual prejudice from limiting her evidence against Franklin to events after April 2002. We thus affirm the judgment dismissing the bad-faith claim against Franklin by a directed verdict.

¶36.    Walls did, however, have evidence of Wausau's alleged bad-faith conduct before April 2002. So she was prejudiced by not being able to present this evidence against Wausau at trial. For this reason, we have no option but to reverse the judgment dismissing the bad-faith claim against Wausau. On remand, the trial judge should reconsider Wausau's motion in limine, taking into account this court's decision when evaluating what evidence is admissible to support Walls's claim.

¶37.    While this appeal certainly begs to be affirmed due to the amount of time that has passed, any impulse toward finality must give way to the precedent set out in *Walls I* and later cases. We remand Walls's bad-faith claim against Wausau back to the trial court, with hope for a speedy resolution of this old dispute.

¶38.    **THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN APPELLANT CINDY WALLS AND APPELLEE EMPLOYERS INSURANCE OF WAUSAU.**

        **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.**

14