# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00805-SCT

*WAYNE JOHNSON ELECTRIC INC. AND WAYNE
JOHNSON, JR.*

*v.*

*ROBINSON ELECTRIC SUPPLY COMPANY,
INC., TONY WALTERS AND CHRIS ELLZEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/2017 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| TRIAL COURT ATTORNEYS: | PAUL MANION ANDERSON |
| | LAWRENCE CARY GUNN, JR. |
| | J. RICHARD BARRY |
| | JOSEPH RANDLE TULLOS |
| | SAMUEL STEVEN McHARD |
| | ROBERT THOMAS BAILEY |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL MANION ANDERSON |
| | SAMUEL S. McHARD |
| ATTORNEYS FOR APPELLEES: | LAWRENCE CARY GUNN, JR. |
| | J. RICHARD BARRY |
| | JOSEPH RANDLE TULLOS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/21/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    Johnson Electric[1] sued Robinson Electric Supply[2] in the Forrest County Chancery Court for numerous claims, including breach of contract, fraud, and a variety of other torts. Johnson asserted that Robinson Electric Supply carried out a fraudulent scheme to overcharge Johnson.  Robinson Electric Supply counterclaimed for balances due on Johnson's accounts.  Both parties requested an accounting.  The chancellor appointed a special master to hear the case due to its complexity and size of the amount in controversy. The chancellor stayed discovery until the special master could release her findings; however, the chancellor also ordered Robinson to release numerous business records sought by Johnson.  Before the accounting was concluded by the special master, Johnson Electric was administratively dissolved, and as a result, the chancellor dismissed the claims brought on behalf of the corporation.  After the special master released her recommendations and a supplemental report, the chancellor agreed with the special master's findings and adopted the report.

¶2.    On appeal, Johnson challenges the chancellor's decision to dismiss Johnson Electric from the lawsuit, the chancellor's adoption of the special master's report, and the chancellor's decision to stay discovery until an accounting could be conducted by the special master. This Court finds that because Johnson Electric was administratively dissolved, it

[1] The suit was filed on behalf of Wayne Johnson, Jr., individually, and Wayne Johnson Electric, Inc.

[2] Other defendants were named in Johnson's suit, including Tony Walters and Chris Ellzey, both employees of Robinson Electric Supply. Randy Williamson, one of Johnson's former employees, was also named as a defendant.

cannot "maintain" a claim as a corporation under Mississippi Code Section 79-4-14.22(a)(4) (Rev. 2013). In addition, we find that neither the chancellor's acceptance of the special master's report nor the chancellor's discovery rulings were an abuse of discretion.

## FACTS & PROCEDURAL HISTORY

¶3. Johnson Electric was established in 1993 and provided electrical services to general contractors on large commercial construction projects in the Hattiesburg area. Johnson bought electrical parts and supplies for various jobs from Robinson Electric Supply. Robinson Electric Supply and Johnson entered into a "joint pay agreement," in which Johnson Electric would submit orders to Robinson Electric Supply, and Robinson Electric Supply would fill the orders and send the invoice for payment to Johnson and the respective general contractor. The invoices were to be paid by the general contractor.

¶4. In June of 2010, Hanco Corporation awarded Johnson a subcontract for the electrical work for the Camp Shelby project, a massive undertaking including the construction of over 315 buildings. It is undisputed that both parties came to an agreement regarding the price of the supplies and fixtures. While the project was ongoing, however, Johnson Electric ceased doing business.

¶5. Johnson alleged that, beginning in 2010, Robinson Electric Supply conspired to fraudulently overcharge for the supplies and fixtures that Johnson ordered. Johnson alleges that the fraudulent scheme continued until 2012, when he discovered the conspiracy and confronted Robinson Electric Supply. According to Johnson, Robinson Electric Supply

3

admitted overbilling and charging for nondelivered items. But in court, Robinson Electric Supply vehemently denied the charge and asserted that—by the time of the Camp Shelby Project— Johnson was delinquent in payment to Robinson Electric Supply for a sum approaching $100,000.

¶6.     Johnson sued Robinson Electric Supply on June, 5, 2013. In response, Robinson Electric Supply filed a motion for an accounting and requested a special master. The chancellor granted Robinson Electric Supply's request and appointed a special master. The chancellor required Robinson Electric Supply to produce to the special master all documents related to Johnson's (1) invoices; (2) delivery tickets; (3) pick tickets;[3] (4) payment records; (5) charges; (6) joint-checking agreements; (7) orders; and (8) return/exchange receipts. The chancellor also stayed all discovery until the special master had an opportunity to review the records submitted by Robinson Electric Supply.

¶7.     On December 17, 2013, and January 7, 2014, both parties met separately with the special master. Robinson Electric Supply sent the special master a chronology of events, along with a letter that denied Johnson Electric's allegations and asserted that Robinson Electric Supply was owed $93,522 of what remained on Johnson's balance. Likewise, Johnson submitted a letter to the special master that sought to identify the specific instances of Robinson Electric Supply's overbilling. Johnson also provided documents pertaining to

---

[3] "Pick tickets" are documents used by commercial retailers to show the delivery of products or supplies.

4

direct shipments from manufacturers and an itemization of amounts owed by Robinson Electric Supply to Johnson.

¶8.    Johnson Electric was administratively dissolved on December 20, 2014, for failing to file an annual report.  On July 6, 2015, Robinson Electric Supply filed a motion to dismiss Johnson Electric as a party, contending, under Mississippi Code Section 79-4-14.21 (Rev. 2013), that because Johnson Electric had been administratively dissolved, it could not continue in the lawsuit.  After Johnson filed a response in opposition, the matter was heard before the chancellor on July 15, 2015.  While the chancellor acknowledged that Wayne Johnson, as an individual, had signed personal guarantees relating to the debts and liabilities of Johnson Electric, she held that Johnson Electric must be dismissed from the suit. However, the court found that Wayne Johnson could proceed with his individual claim against Robinson Electric Supply.[4]

¶9.    With all parties in agreement, the special master categorized three general issues to be addressed in her report.[5] On September 23, 2015, the special master filed her report.  The

———————————

    [4] Only one of the sixteen claims filed by Johnson against Robinson Electric Supply—for negligent infliction of emotional distress—could have been pursued by Johnson individually at trial.

    [5] The three general categories of issues were stated as follows:

    (1)    Johnson alleges that Robinson has not credited its account properly. The largest credit issues surround the Camp Shelby Stimulus Project.

    (2)    Johnson alleges Robinson did not deliver or provide certain items that Johnson paid for based in part on missing "pick" tickets.

report documented thousands of transactions—including a line-by-line itemization for each of the jobs Johnson alleged was overbilled—and found that Johnson owed Robinson Electric Supply $38,585.99. Robinson Electric then filed a motion to accept the special master's report, and Johnson filed a motion objecting to it. Johnson's objection discussed, in great detail, many objections to the special master's findings on specific jobs.

¶10. On January 1, 2016, a hearing was conducted by the chancellor. At the hearing, both parties had an opportunity to question the special master regarding the methodology used to reach the conclusion in her final report. At Johnson's request, the chancellor ordered the special master to reconsider three issues[6] but stayed discovery until the special master's supplemental report had been filed.

¶11. On March 7, 2016, the chancellor conducted another hearing, which included testimony by the special master. On September 20, 2016, the special master released her

---

    (3)     Johnson alleges that he was charged an improper amount for items he did receive from Robinson.

[6] The three issues submitted to the special master to address in her supplemental brief were stated as follows:

    (1)     Whether or not the three separate "Conditional Waiver Release Upon Final Payment" signed by Robinson Electric [Supply] on the three FEMA Shelter jobs released Robinson Electric from the past due balance of Johnson shown by Robinson Electric?

    (2)     Whether or not Johnson [was] owed a credit of $9,000 on the McCain job?

    (3)     Whether or not Johnson was overcharged on either the Collins Pizza Hut job or the Raymond Pizza Hut job?

6

supplemental report, which found that the objections raised by Johnson to the original report were not supported by evidence or additional arguments. The special master also confirmed her prior finding that Johnson owed Robinson Electric Supply $38,585.99. Robinson Electric Supply subsequently filed a motion for summary judgment.

¶12. An additional hearing was conducted on December 8, 2016, at which Johnson once again objected to the special master's conclusions. Specifically, Johnson contended that the special master's finding was erroneous because Johnson was unable to conduct discovery. After the hearing, the chancellor entered an order accepting the special master's report. The chancellor also delayed ruling on Robinson Electric Supply's motion for summary judgment.

¶13. On March 1, 2017, after both parties had filed motions regarding whether discovery should be conducted or stayed, the chancellor granted Johnson's request to depose eight key witnesses, while requiring both parties to produce documents requested by the other party. However, the chancellor limited discovery only to Johnson's claims for negligent infliction of emotional distress and to his individual claims for fraud. Ultimately, Johnson and Robinson Electric Supply agreed to dismiss the case to make the chancellor's rulings immediately appealable. On May 25, 2017, the chancellor granted an agreed judgment of dismissal. On June 1, 2017, Johnson filed a notice of appeal in this Court.

## DISCUSSION

### I.      Dismissal of Wayne Johnson Electric, Inc., as a Party

¶14. Whether dismissal of a dissolved corporation is appropriate is governed by statute and is therefore a question of law. *See Columbus Cheer Co. v. City of Columbus*, 155 So. 3d 744, 746 (Miss. 2014). A chancellor's conclusions on issues of law are reviewed de novo. *In re Estate of Baumgarder*, 82 So. 3d 592, 598 (Miss. 2012) (citing *Corp. Mgmt., Inc. v. Greene Cty.*, 23 So. 3d 454, 459 (Miss. 2009)).

¶15. Under the plain language of Mississippi Code Section 79-4-14.21(f) (Rev. 2013), "[a] corporation that has been administratively dissolved may not maintain any action, suit or proceeding in any court of this state until the corporation is reinstated."

¶16. Johnson argues that the Court of Appeals has interpreted "maintain" to mean "to commence" litigation. Johnson cites the Court of Appeals's holding in *Royer Homes of Mississippi v. Steiner* 131 So. 3d 592 (Miss. Ct. App. 2013). In *Royer*, the Court of Appeals held that "[d]issolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its corporate name . . . ." *Id.* at 593 (quoting Miss. Code Ann. § 79-4-14.05(b)(5) (Rev. 2013)). The Court of Appeals also found that the legislature did not intend to stop a lawsuit that was legally commenced because the lawsuit was not concluded within the five-year time frame enunciated in the statute.[7] *Id.* at 593.

¶17. However, the *Royer* court repeatedly mentioned that the statutes used to make a decision were the statutes in effect at the time of the corporation's dissolution. *Id.* The

---

[7] *Royer* also noted that the current version of the statute deleted the five-year requirement. *Royer*, 131 So. 3d at 593 (citing Miss. Code Ann. § 79-4-14.22(a) (Supp. 2012)).

*Royer* corporation was dissolved in December of 2003. *Id.* In 2013, the Legislature enacted Section 79-4-14.21(f), which bars administratively dissolved corporations from maintaining an action.[8] Specifically, that statute states, "[a] corporation that has been administratively dissolved may not maintain any action, suit or proceeding in any court until the corporation is reinstated." Miss. Code. Ann. § 79-4-14.21(f) (Rev. 2013). Although Section 79-4-14.21(f) was in effect at the time of the *Royer* decision, the *Royer* court did not consider it because Section 79-4-14.21(f) was not effective at the time of the corporation's dissolution in 2003. Therefore, Johnson's reliance on *Royer* is misplaced.

¶18. Johnson also argues that Johnson Electric's suit against Robinson Electric Supply should continue to "wind up its corporate business," as allowed under Mississippi Code Section 79-4-14.21(c) (Supp. 2018). This subsection, however, is subject to Mississippi Code Section 79-4-14.05 (Rev. 2013), which is only applicable to voluntary dissolutions. Johnson did not file for either voluntary dissolution under Section 79-4-14.03 or judicial dissolution under Section 79-4-14.30. Johnson Electric was administratively dissolved under

---

[8] Johnson points to another Court of Appeals decision to support the argument that "maintain" means "to file." *Walls v. Franklin Corp.*, 177 So. 3d 1156, 1158 (Miss. Ct. App. 2015) ("an employee cannot 'maintain,' that is, *cannot file* "a bad faith action" prior to exhausting her administrative remedies." (quoting *Walls v. Franklin Corp.* (*Walls I*), 797 So. 2d 973, 977 (Miss. 2001))). However, *Walls* is distinguishable from the current case. At no point in *Walls* is Section 79-4-14.21(f) cited, nor does *Walls* concern the issue of whether a corporation may continue a lawsuit after administrative dissolution. Instead, *Walls* concerned a workers' compensation claimant who sued his employers and insurance carrier for bad faith in failing to reimburse costs of prescription shoes and a whirlpool bath. *Walls*, therefore, is not relevant here.

79-4-14.21(b) (Rev. 2013), which has no provision that allows for a "wind up" continuation. Therefore, Johnson's reliance on **Royer** and 79-4-14.21(c) is misplaced.

¶19.    Only one ruling has directly addressed Section 79-4-14.21(f) and whether an administratively dissolved corporation could "maintain" a lawsuit.[9] In *Columbus Cheer Co. v. City of Columbus*, 155 So. 3d 744, 746 (Miss. 2014), this Court held that a dissolved corporation could only *defend* an action ongoing at the time of an administrative dissolution and that under a plain reading of Mississippi Code Section 79-4-14.21(f),

> Administratively dissolved corporations continue to exist regarding agreements established prior to dissolution and for the purposes of *defending* the corporation in actions stemming from such agreements. However, administratively dissolved corporations *cannot "maintain"* a legal action.

*Id.* (emphasis added) (citations omitted). In the present case, Johnson initiated the suit; he is not defending it. Additionally, considering the definition of "maintain," Johnson Electric may not continue this suit because it has been administratively dissolved.

---

[9] "Maintain" is defined as follows:

> **maintain** vb. 1. *To continue (something)*. 2. To continue in possession property, etc.). 3. To assert (a position or opinion): to uphold (a position or opinion) in argument. 4. To care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep. 5. To support (someone) financially; esp., to pay alimony. 6. (Of a third party to a lawsuit) to assist a litigant in prosecuting or defending a lawsuit; to meddle in someone else's litigation.

*Maintain*, Black's Law Dictionary (10th ed. 2014) (emphasis added).

10

¶20. Even though in *Columbus Cheer* the corporation was administratively dissolved prior to the commencement of litigation and here Johnson Electric was dissolved during proceedings, *Columbus Cheer* still applies to the extent it holds that an administratively dissolved corporation cannot maintain a legal action.

¶21. Another statutory distinction between the ability "to commence" and the ability "to maintain" a lawsuit can be found in Section 79-4-14.21(e), which states,

> [T]he administrative dissolution of a corporation shall not impair the validity of any contract, deed, mortgage, security interest lien, or act of the corporation or prevent the corporation from *defending* any action, suit or proceeding in any court of this state.

Miss. Code Ann. § 79-4-14.21(e) (Rev. 2013) (emphasis added). Johnson Electric brought the claims, so it is not *defending* an action.

¶22. The Georgia Court of Appeals has decided an almost identical issue. In *Exclusive Properties, Inc. v. Jones*, a corporation sued a law firm for legal malpractice. *Exclusive Props., Inc. v. Jones*, 460 S.E.2d 562, 563 (Ga. Ct. App. 1995). During the course of litigation, the corporation was administratively dissolved. *Id.* Like Mississippi, Georgia law provides that "a corporation administratively dissolved continues its corporate existence but may not carry on any business except that *necessary* to wind up and liquidate its business affairs."[10] *Id.* (quoting Ga. Code Ann. § 14-2-1405). The dissolved corporation argued that,

---

[10] Georgia Code Section 14-2-1405, which is almost identical to Mississippi Code Section 79-4-14.05, states,

> [a] corporation that has filed a notice of intent to dissolve continues its

11

while the corporation was dissolved for failing to file its annual registration, it was entitled to continue its suit under Georgia Code Section 14-2-1408, which provides that a dissolved corporation may defend or settle lawsuits brought against the dissolved corporation. The Georgia Court of Appeals ruled that the dissolved corporation's "maintenance of the lawsuit against defendants is not a 'necessary' part of winding up its business and affairs." **Jones**, 460 S.E.2d at 563. Most importantly, that court ruled that the Legislature never intended for the statute governing voluntary dissolution "to be applicable to cases involving administrative dissolution." **Id.** at 564.

¶23. The distinction between voluntary dissolution and administrative dissolution is important. Here, Johnson did not file for either voluntary dissolution or judicial dissolution. Instead, Johnson Electric was administratively dissolved for failing to file an annual report within sixty days after it was due. In other words, Johnson Electric did not choose to dissolve; it was forced to dissolve.

¶24. To satisfy the condition for reinstatement, Johnson Electric would have to present "a certificate from the Mississippi Department of Revenue reciting that all taxes owed by the

---

corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including: (1) Collecting its assets; (2) Disposing of its properties that will not be distributed in kind to its shareholders; (3) Discharging or making provision for discharging its liabilities; (4) Distributing its remaining property among its shareholders according to their interests; and (5) Doing every other act necessary to wind up and liquidate its business and affairs.

Ga. Code Ann. § 14-2-1405.

12

corporation have been paid." Miss. Code Ann. § 79-4-14.22(a)(4) (Rev. 2013). Johnson

Electric owed $232,900.00 in unpaid taxes to the Internal Revenue Service and to the State.[11]

With respect to applying for reinstatement, Johnson testified

| [Robinson Electric Supply]: | Why didn't you file your annual report in 2014? |
|---|---|
| [Johnson]: | I had too many problems. I mean. I didn't have a business anymore. It wasn't any need to file a report. |

¶25.    Accordingly, we affirm the chancellor's ruling dismissing the claims of Johnson

Electric after it was administratively dissolved.[12]

## II.    Whether the chancellor's acceptance of the special master's report constituted an abuse of discretion.

¶26.    Johnson contends that the chancellor's adoption of the special master's report was an

abuse of discretion. If a special master is appointed, "[t]he Court shall accept the master's

finding of fact unless manifestly wrong." M.R.C.P. 53(g)(2). A chancellor's decision to

_____

[11] Also, the special master incurred fees just under $30,000 in preparing her report. According to the chancellor's order, Robinson Electric Supply advanced the fees; however, the court held that, after the March 22, 2016, hearing, both parties would split the fees owed to the special master until the matter was resolved. In addition, as noted previously, the special master found that Johnson's balance owed to Robinson Electric Supply was $38,585.99.

[12] Johnson also argues that the corporate claims of Johnson Electric remain because he is the sole shareholder. Johnson cites *Paradise Corp. v. Amerihost Development, Inc.*, 848 So. 2d 177, 178 (Miss. 2003), holding that a successor was a mere continuation of predecessor under "continuity of enterprise" theory. Not only is *Paradise* inapplicable for a variety of reasons (e.g., the successor entity in *Paradise* was still operating as a viable business), but all of the individual claims by Johnson were voluntarily dismissed and thus are not before this Court on appeal.

accept or deny a special master's report is reviewed for an abuse of discretion. ***Trovato v. Trovato***, 649 So. 2d 815 (Miss. 1995).

¶27.    The special master possessed the requisite knowledge, background, and skill to render a recommendation on the thousands of transactions that were submitted in this case. She graduated from Mississippi State University with a degree in accounting. Before attending law school she worked for four years for Arthur Andersen & Company as an auditor. During that time, she passed the CPA exam. She is a licensed attorney, her legal practice includes accounting matters, and she represents estates and conservatorships, which require accountings.

¶28.    Johnson requested—and was granted—an accounting of Robinson Electric Supply from January 1, 2009, through May 31, 2013. The jurisdictional statement in Johnson's complaint stated, "jurisdiction is appropriate due to the request for a complex accounting which is essential . . . ." Given that the accounting concerned a period which spanned almost four and a half years, Robinson Electric Supply produced thousands of documents for the special master to review.[13]

¶29.    Johnson argues that the special master failed to take sufficient oral testimony to render a factual determination. At a March 7, 2016, hearing, however, the special master clarified her reasoning for not taking depositions:

---

[13] The special master estimated that she received between five thousand and ten thousand documents.

14

Your Honor, there was one request in a letter to take—by Johnson to take the deposition of Tony Walters early on in this matter before I looked through all of these documents. And I raised his objection where he said he had requested additional ones, I did not—I don't personally recall; I'm not denying it, but I don't recall it. I don't—I did not see early on in this litigation the need for depositions because I needed to go through the documents and see what the actual evidence [was].[14]

¶30. Johnson further contended that depositions were needed to prove that the documents considered by the special master were authentic. The special master responded to Johnson's claim in her testimony: "It was never because they needed to authenticate the documents. You know, the whole process, both sides have been using documents to support their various arguments." Ultimately, the chancellor found that the business records considered by the special master were admissible evidence.

¶31. After the release of the special master's report, the chancellor gave Johnson another opportunity to identify issues that he wanted recommitted to the special master. Johnson asked the special master to reconsider three issues he believed were errors in her report. The special master considered Johnson's objections and prepared a supplemental report.

¶32. The special master made findings of fact using the thousands of documents that were submitted to her. Not only did she itemize each individual project between Johnson and Robinson Electric Supply, but she also pointed out instances in which Robinson Electric Supply owed money to Johnson for undelivered supplies that previously had been paid for

---

[14] It is also worth nothing that at no point did Johnson ever submit sworn testimony for the special master to consider.

15

by Johnson. The special master testified in great detail about the methodology she used in reaching the conclusions in her report.

¶33. She also determined that while Johnson sought a full release of account balances owed to Robinson Electric Supply, the language of the contract did not indicate that Robinson Electric Supply intended to release Johnson from the entire balance owed. Furthermore, the special master found that even were Johnson released from the disputed balance, such release would not satisfy the entire balance owed by Johnson to Robinson Electric Supply. Finally, the special master heard Johnson's objections to her report and addressed each objection individually in her supplemental report. Her determination was affirmed by the chancellor. Accordingly, nothing in the special master's report or supplemental report has been shown to be manifestly erroneous.

¶34. Johnson's brief points to twelve instances in which the special master's report was allegedly erroneous with regard to specific jobs between Johnson Electric and Robinson Electric. But because we found that the chancellor did not err in dismissing Johnson Electric's claims and since the claims of alleged error on specific jobs belong to Johnson Electric, they will not be considered by this Court.

¶35. Therefore, we affirm the chancellor's ruling adopting the special master's report.

**III. Whether the chancellor's discovery rulings were proper.**

¶36. "Trial Courts are afforded broad discretion in discovery matters, and this Court will

16

not overturn a trial court's decision unless there is an abuse of discretion." ***Ferguson v. Univ. of Miss. Med. Ctr.***, 179 So. 3d 1060, 1064 (Miss. 2015) (quoting ***Ashmore v. Miss. Auth. on Educ. Television***, 148 So. 3d 977, 981 (Miss. 2014)).

¶37. Finally, Johnson argues that this Court should reverse the chancellor's decision to stay discovery. However, we have held that the chancellor's dismissal of Johnson's corporate claims was proper. Because Johnson voluntarily dismissed his personal claims, discovery issues are moot.

¶38. Therefore, we affirm the chancellor's decision to stay discovery until the special master could draft her report. Accordingly, we remand the question of who is responsible for the special master's expenses to the trial court.

## CONCLUSION

¶39. For the foregoing reasons, we affirm the chancellor's rulings.

¶40. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**

17