# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01181-COA

**JEREMY THORNHILL**                                        **APPELLANT**

**v.**

**WALKER-HILL ENVIRONMENTAL AND**             **APPELLEES**
**ZURICH AMERICAN INSURANCE COMPANY**
**OF ILLINOIS**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/2020 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| | DARRYL MOSES GIBBS |
| ATTORNEYS FOR APPELLEES: | OLIVIA YEN TRUONG |
| | DORIS THERESA BOBADILLA |
| | NATHAN L. BURROW |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 10/19/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Jeremy Thornhill alleged that he injured his back while working for Walker-Hill Environmental. He sought workers' compensation benefits from Walker-Hill and its insurance carrier, Zurich American Insurance Company of Illinois (collectively, "the Employer/Carrier"), but the Employer/Carrier denied that Thornhill had sustained a compensable injury. The parties eventually entered into a compromise settlement, which the Mississippi Workers' Compensation Commission approved. After the Commission approved

the settlement, Thornhill sued the Employer/Carrier in circuit court, alleging that they had denied his claim in bad faith. The Employer/Carrier filed a motion to dismiss, arguing that Thornhill had not exhausted his administrative remedies—and that the circuit court lacked jurisdiction—because the Commission never made a factual finding that he was entitled to workers' compensation benefits. The circuit court agreed and dismissed the case. On appeal, Thornhill argues that the Commission's approval of the compromise settlement exhausted his administrative remedies and that his bad-faith lawsuit against the Employer/Carrier may go forward in the circuit court. For the reasons discussed below, we agree and reverse and remand the case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Thornhill worked at Walker-Hill as a supervisor driller. He alleges that he injured his back while attempting to move a heavy rig on July 5, 2017. He alleges that he reported his injury to his supervisor the following day, but Walker-Hill denies this allegation. On July 7, Walker-Hill asked Thornhill to take a drug test. Thornhill went to the testing facility and provided a sample, but the sample was reportedly "cold" (i.e., below the minimum acceptable temperature for testing). Thornhill says that he tried to produce a second sample but was unable to do so, and he left without providing a second sample. Walker-Hill says that Thornhill did not return to work for several days and was fired for refusing to submit to a drug screen. Thornhill began seeing a doctor for his back injury, and the doctor eventually recommended that Thornhill undergo back surgery.

¶3.     In October 2017, Thornhill filed a petition to controvert with the Commission. In

November 2017, the Employer/Carrier filed an answer in which they admitted both that Thornhill's injury arose out his employment and that they had received proper notice of the injury. However, the Employer/Carrier denied that Thornhill was entitled to benefits, citing his refusal to complete the drug test. In April 2018, the Employer/Carrier filed an amended answer in which they denied that Thornhill had suffered any work-related injury and denied that they had received proper notice of the injury.[1]

¶4. Following a hearing, an administrative judge ordered Thornhill to undergo an independent medical examination (IME) by Dr. Robert McGuire to "determine [Thornhill's] current condition and need for medical treatment." In his subsequent report, Dr. McGuire noted that Thornhill had been injured at work in 2015 but was able to return to work and function normally following conservative treatment. Dr. McGuire concluded that the surgery recommended by Thornhill's treating physician was "absolutely appropriate." Dr. McGuire concluded that Thornhill needed back surgery because of his injury in July 2017, which had "substantially aggravated [his] preexisting condition." Finally, Dr. McGuire concluded that Thornhill had not reached maximum medical improvement (MMI) and would not reach MMI until approximately six months post-surgery.

---

[1] The Employer/Carrier state that their attorney in the workers' compensation case initially believed that the injury occurred on the job and that Walker-Hill received notice because the attorney thought that Thornhill's July 7 drug test was a post-accident drug test. But the Employer/Carrier now assert that "the drug test was not a post-accident drug screen" and that Thornhill "never reported a work injury . . . prior to filing his [p]etition to [c]ontrovert." The Employer/Carrier say that they filed an amended answer in the workers' compensation case after their attorney was advised of his mistake. However, the Employer/Carrier's amended answer continued to assert that Thornhill was not "entitled to benefits due to his refusal to undergo drug testing."

¶5. After receiving Dr. McGuire's IME report, the parties reached a settlement. In July 2019, Thornhill filed an application, which the Employer/Carried joined, for the Commission to approve their compromise settlement. The application stated that Thornhill contended that he was entitled to benefits, while the Employer/Carrier denied that Thornhill had sustained a compensable injury. However, the Employer/Carrier had agreed to pay Thornhill $145,000 to settle the claim. The application stated that it was made pursuant to Mississippi Code Annotated section 71-3-29 (Rev. 2011) because the compensability of Thornhill's injury was "in issue and [it was] impossible to determine the exact extent of the disability suffered by [Thornhill], if any." The Commission found that the settlement was in Thornhill's best interest, approved the settlement, and dismissed the case with prejudice.

¶6. Pursuant to the settlement, Thornhill signed a general release that released the Employer/Carrier from all claims arising out of or connected with his alleged on-the-job injury. However, the general release included the following carve-out:

> [Thornhill] reserves and does not release, however, the right to bring a claim for bad faith against any party and the parties agree administrative remedies in [Thornhill's] workers' compensation claim have been fully and finally exhausted.

The Employer/Carrier acknowledge that they drafted the release and included the above-quoted language at the request of Thornhill's attorney.

¶7. In January 2020, Thornhill sued the Employer/Carrier in circuit court, alleging bad-faith denial of his workers' compensation claim. The Employer/Carrier answered and later filed a motion to dismiss, arguing that Thornhill had not exhausted his administrative remedies. Specifically, the Employer/Carrier argued that the compromise settlement did not

4

exhaust Thornhill's administrative remedies because the Commission never made a finding that Thornhill had a compensable claim or was entitled to benefits. They further argued that the circuit court lacked "jurisdiction" because the Commission had never made such a finding. The circuit court agreed and granted the motion to dismiss. The court reasoned that prior to filing suit for a bad-faith denial of workers' compensation benefits, a plaintiff must first obtain a ruling from the Commission that he is entitled to the benefits at issue.

¶8. On appeal, Thornhill raises two issues. First, he argues that the compromise settlement exhausted his administrative remedies as a matter of law and that he may proceed on his bad-faith claim in the circuit court. Second, Thornhill argues that the Employer/Carrier should be estopped from asserting an exhaustion-of-remedies argument because the Employer/Carrier drafted a release that not only reserved Thornhill's right to bring a bad-faith lawsuit but also specifically provided that Thornhill's "administrative remedies . . . [had] been fully and finally exhausted."

¶9. For the reasons explained below, we hold that the Commission's approval of the compromise settlement exhausted Thornhill's administrative remedies and that Thornhill's bad-faith lawsuit may go forward in the circuit court. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Because we reverse on the first issue raised by Thornhill, it is unnecessary to address his estoppel argument.

## ANALYSIS

¶10. We review de novo an order dismissing a complaint for failure to state a claim upon which relief can be granted. *Hardaway v. Howard Indus. Inc.*, 211 So. 3d 718, 721 (¶15)

(Miss. Ct. App. 2016). "We accept as true all well-pled factual allegations in the complaint, and we will affirm only if it appears beyond doubt that the plaintiff would be unable to prove any set of facts that would support a right of recovery." *Id.* (ellipsis and quotation marks omitted).

¶11. "[T]he independent tort of bad faith refusal to pay compensation is an exception to" the general rule that workers' compensation benefits are an employee's "exclusive remedy" for an on-the-job injury. *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 479 (¶8) (Miss. 2002) (citing *S. Farm Bureau Cas. Ins. Co. v. Holland*, 469 So. 2d 55, 59 (Miss. 1984); *Luckett v. Miss. Wood Inc.*, 481 So. 2d 288, 290 (Miss. 1985); *McCain v. Nw. Nat'l Ins. Co.*, 484 So. 2d 1001, 1002 (Miss. 1986); *Leathers v. Aetna Cas. & Surety Co.*, 500 So. 2d 451, 453 (Miss. 1986)). A cause of action for bad-faith refusal arises "when an insurance carrier or self-insured employer denies benefits without a legitimate or arguable basis, commits a willful or malicious wrong, or acts with gross and reckless disregard for the claimant's rights." *Hardaway*, 211 So. 3d at 722 (¶16) (citing *Cook*, 832 So. 2d at 479 (¶¶8-9); *Chapman v. Coca-Cola Bottling Co.*, 180 So. 3d 676, 681 (¶20) (Miss. Ct. App. 2015); *Walls v. Franklin Corp.*, 177 So. 3d 1156, 1163 (¶30) (Miss. Ct. App. 2015) ("*Walls II*"); *AmFed Cos. v. Jordan*, 34 So. 3d 1177, 1183 (¶21) (Miss. Ct. App. 2009)).

¶12. "[U]nder Mississippi law, claimants are required to exhaust their administrative remedies, i.e., obtain a final judgment from the Commission prior to instituting a bad-faith action for failure to pay benefits pursuant to the Workers' Compensation Act." *Harper v. Cal-Maine Foods Inc.*, 43 So. 3d 401, 403 (¶5) (Miss. 2010) (quotation marks omitted).

6

Regarding this requirement, our Supreme Court has stated that "our precedent requires only a determination that a plaintiff is 'entitled' to compensation before a bad-faith action may be brought." *Bullock v. AIU Ins. Co.*, 995 So. 2d 717, 723 (¶21) (Miss. 2008). In another case, the Supreme Court stated that a plaintiff "could not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary." *Walls v. Franklin Corp.*, 797 So. 2d 973, 977 (¶18) (Miss. 2001) ("*Walls I*"). In that case, the Court held that the plaintiff's bad-faith lawsuit had to be dismissed because her workers' compensation case and her claim for reimbursement for the disputed supplies and services remained pending before the Commission. *Id.* at 975-77 (¶¶8-9, 18).

¶13. This Court has also addressed the exhaustion requirement. In *Hardaway*, we held that a plaintiff "must obtain a final judgment from the Commission that he is entitled to benefits . . . before instituting an action for the alleged bad faith denial of those benefits." *Hardaway*, 211 So. 3d at 722 (¶16). And in *Walls II*, this Court held that the Commission must determine whether the plaintiff is entitled to the disputed benefits before she may sue for bad faith. *Walls II*, 177 So. 3d at 1163 (¶¶30-33).

¶14. Finally, our Supreme Court has addressed the exhaustion issue in a case that, like this one, involved a settlement approved by the Commission. *Cook*, 832 So. 2d at 480 (¶¶14-15). In *Cook*, the employer (MP&L) initially provided workers' compensation benefits to the injured employee (Cook) but later reconsidered and cut off his benefits. *Id.* at 477-78 (¶4). After Cook filed a petition to controvert, he and MP&L settled his claim. *Id.* at 478 (¶4).

7

Under the settlement, which the Commission approved, MP&L agreed to pay Cook $55,000, and Cook reserved his right to bring a bad-faith claim against MP&L. *Id.* Cook sued MP&L for bad faith and prevailed following a jury trial in circuit court. *Id.* On appeal, the Supreme Court held that Cook had "[c]learly" exhausted the "administrative remedies available to him" because "[h]e settled his claim, and the [settlement] was approved by the . . . Commission along with his reservation of rights to bring a bad faith claim." *Id.* at 480 (¶14). The Court also emphasized that there were no "pending claims before the Commission" when Cook filed suit. *Id.* at (¶15). Citing *Walls I*, the Court acknowledged that it had "held previously that a claimant could not maintain a bad faith action against an employer for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary." *Id.* But the Court held that "what distinguishe[d]" Cook's case from *Walls I* was that "Cook's settlement claim had been approved by the Commission and nothing was left pending before [the Commission]." *Id.*

¶15.   At first blush, it would appear that Thornhill has also "[c]learly" exhausted all "administrative remedies available to him." *Id.* at (¶14). As in *Cook*, Thornhill settled his workers' compensation claim while reserving his right to bring a bad-faith claim, the Commission approved the settlement, and "nothing [is] left pending before [the Commission]." *Id.* at (¶15).

¶16.   However, the Employer/Carrier argue that *Cook* is factually distinguishable because Cook settled his claim under Mississippi Code Annotated section 71-3-37(10) (Rev. 2011),

which provides that the Commission may approve a lump-sum payment "equal to the present value of future compensation payments" if "the [C]ommission determines that" such a payment is in "the best interests of a person entitled to compensation." In contrast, Thornhill settled his claim under section 71-3-29, which permits the Commission to approve "compromise" settlements in cases in which the existence or extent of the claimant's disability is disputed. The Employer/Carrier point out that section 71-3-37(10) requires the Commission to find that the claimant is "a person entitled to compensation," whereas section 71-3-29 requires no such finding. The Employer/Carrier further emphasize that in *Cook*, the Supreme Court specifically stated, "Under [section] 71-3-37(10) the Commission is entitled to approve settlements only when it is in the best interest of a 'person entitled to compensation.' Thus, clearly Cook was entitled to compensation based on the settlement agreement approved by the Commission." *Cook*, 832 So. 2d at 480 (¶14). Based on this language, the Employer/Carrier argue that *Cook*'s holding only applies to a lump-sum settlement approved under section 71-3-37(10).

¶17. Before addressing the Employer/Carrier's argument or delving further into *Cook*, it is helpful to briefly explain the differences between the two types of workers' compensation settlements. Thornhill's case was settled under section 71-3-29. Settlements under that statute are commonly known as "compromise settlements" or "9(i) settlements." John R. Bradley & Linda A. Thompson, *Mississippi Workers' Compensation Law* § 6:50, at 362 (2021 ed.). They are called "compromise settlements" because section 71-3-29 permits the Commission to approve settlements in cases in which an employer/carrier dispute the

existence of a compensable injury or the extent of the claimant's disability. *Id.* They are referred to as "9(i) settlements" because the provision was section 9(i) of the original Workmen's Compensation Law of 1948. *Id.*

¶18.   In contrast, section 71-3-37(10) authorizes the Commission to approve "lump-sum payments" when an employer/carrier's liability for compensation has already "been established by admission . . . or by award." *Id.* § 6:49, at 361.  These payments are also known as "13(j) settlements" because this provision was section 13(j) of the Workmen's Compensation Law of 1948. *Id.* at 360.  A lump-sum payment does not involve a compromise of a claim that is still in dispute but is simply the present value of future compensation payments that the claimant is entitled to receive. *Id.*

¶19.   We now turn back to review the *Cook* case in more detail.  As noted previously, the Employer/Carrier argue that the critical distinction between this case and *Cook* is that this case involves a compromise/9(i) settlement whereas *Cook* involved a lump-sum/13(j) settlement.  But a review of the record in *Cook* shows that this is not correct.  In fact, the settlement in *Cook* was also a compromise/9(i) settlement.  In *Cook*, the Supreme Court was mistaken when it indicated that the Commission had approved that settlement under section 71-3-37(10).

¶20.   In *Cook*, the Commission entered an "Order Granting Approval of 9(i) Compromise Settlement."[2]  The Commission's order noted that before MP&L cut off Cook's benefits,

_____

[2] The Commission's order is part of the record in the Mississippi Supreme Court in case number 2001-CA-00079-SCT.  We may take judicial notice of Supreme Court files. *Crawford v. Fisher*, 213 So. 3d 44, 47 (¶10) (Miss. 2016).  We have filed a copy of the Commission's order as a separate document as part of the record in this case.

10

MP&L paid a total of $11,658.14 in temporary disability benefits and $24,999.86 in medical bills. The Commission's order then stated,

> [Cook] has contended and now contends that he is entitled to substantial compensation, whereas, [MP&L] has contended, and now contends, that [Cook] is not entitled to further compensation, and in no event to the amount thereof demanded by [Cook]. However, in order to fully compromise and settle the disagreement as to the extent of the disabilities suffered by [Cook], [MP&L] has agreed to pay, and [Cook] has agreed to accept, the sum of $55,000.00, of which 50% is being paid in lieu of workers' compensation disability benefits, and 50% of which is being paid in lieu of future medical expenses, as a complete, absolute and full and final settlement of any and all claims under the Mississippi Workers' Compensation Act . . . .
>
> . . . [T]his request and application are made pursuant to the provisions of Section 9(i) of the Workers' Compensation Act, . . . and this is a case coming within the purview of said Act for the reason that it is impossible to determine the exact extent of the disability, loss of use or loss of wage earning capacity suffered by [Cook], and it would be to the best interests of [Cook] for the Commission to allow [MP&L] to settle and compromise [its dispute] with [Cook] . . . .

¶21. Thus, it turns out that the factual distinction that the Employer/Carrier attempt to draw between this case and *Cook* does not exist. Just like this case, *Cook* involved a compromise/9(i) settlement under section 71-3-29.

¶22. A few months after the Commission approved the settlement in *Cook*, Cook filed a complaint in circuit court alleging that MP&L had stopped payment of temporary disability benefits and refused to pay permanent disability benefits in bad faith. A jury returned a verdict in favor of Cook. *See Cook*, 832 So. 3d at 478, 481, 484 (¶¶4, 17, 32).

¶23. On appeal to the Supreme Court, MP&L made the same basic arguments that the Employer/Carrier make in this case. MP&L argued that Cook had not exhausted his administrative remedies because he entered into a compromise settlement and never obtained

a determination from the Commission that he was entitled to the benefits that MP&L had allegedly denied in bad faith. MP&L also argued that the circuit court and the jury lacked "jurisdiction" to make that finding because the question whether Cook was entitled to the disputed benefits was within the "exclusive administrative jurisdiction" of the Commission. *See id.* at 479-80 (¶¶8-15); Appellant's Brief, *Cook*, No. 2001-CA-00079-SCT, at 18-28 (Jan. 17, 2002). As discussed above, the Supreme Court rejected these arguments and held that Cook was entitled to pursue his bad-faith claim in the circuit court because the Commission had approved the parties' settlement, and "nothing was left pending before [the Commission]." *Cook*, 832 So. 2d at 480 (¶15).

¶24.    After reviewing the record in *Cook*, it becomes clear that the only arguably significant distinction between this case and *Cook* is that MP&L initially admitted that Cook suffered a compensable injury and, for a period of time, voluntarily paid temporary disability benefits and Cook's medical bills. Here, in contrast, the Employer/Carrier have disputed the existence of a compensable injury from the outset of the case. However, this factual distinction is not material or legally significant. The relevant comparison is that both in *Cook* and in this case, the employer/carrier refused to pay the benefits that were the subject of the plaintiff's bad-faith lawsuit, and the Commission had never made a determination that the plaintiff was entitled to those disputed benefits. Rather, that dispute was the subject of the parties' compromise settlement. Thus, consistent with *Cook*, we conclude that Thornhill exhausted his administrative remedies by obtaining the Commission's approval of a settlement that left nothing more pending before the Commission. *Cook*, 832 So. 2d at 480

(¶¶14-15).

¶25. Finally, as noted above, the Employer/Carrier also argue that the circuit court lacks jurisdiction to consider Thornhill's claim. Specifically, they argue that the circuit court lacks jurisdiction because this Court has stated that

> the Commission has *exclusive jurisdiction* to determine in the first instance whether [a] claimant is entitled to [workers' compensation] benefits. Therefore, the claimant must obtain a final judgment from the Commission that he is entitled to benefits—i.e., he must exhaust his administrative remedies—before instituting an action for the alleged bad faith denial of those benefits.

*Hardaway*, 211 So. 3d at 722 (¶16) (emphasis added) (collecting cases).

¶26. However, there is no jurisdictional issue in this case. In prior cases in which this Court or the Supreme Court has referred to the Commission's jurisdiction to decide claims for workers' compensation benefits, we have done so because a claimant was attempting to litigate his bad-faith claim while his underlying case was still pending before the Commission. *See, e.g.*, *id.* at 720-22 (¶¶5, 9, 17); *Walls I*, 797 So. 2d at 975-77 (¶¶8-9, 18); *Walls II*, 177 So. 3d at 1159, 1163 (¶¶7-8, 31-32). In effect, the claimant was attempting to circumvent the Commission's "continuing jurisdiction over such cases." *Walls I*, 797 So. 2d at 977 (¶18). The essential concern in that scenario is that "it would be 'frighteningly conceivable' that a jury could find the [underlying workers' compensation] claim was compensable and award punitive damages for bad-faith conduct, even though the Commission—vested with exclusive jurisdiction—later found the claim was not compensable." *Walls II*, 177 So. 3d at 1163 (¶31) (quoting *Kitchens v. Liberty Mut. Ins.*, 659 F. Supp. 467, 469 (S.D. Miss. 1987)). That risk is absent when, as in this case, the

Commission has already approved a full and final settlement of the underlying claim. Because "nothing [is] left pending before [the Commission]," *Cook*, 832 So. 2d at 480 (¶15), there is no risk that a jury will usurp the Commission's jurisdiction or return a verdict that conflicts with any finding of the Commission. In such a case, "the circuit court clearly ha[s] jurisdiction" to hear the claimant's bad-faith claim. *Id.* at (¶12).

## CONCLUSION

¶27.    In summary, we hold that Thornhill exhausted his administrative remedies because he fully and finally settled his workers' compensation claim against the Employer/Carrier, the Commission approved the settlement, and there is nothing left pending before the Commission. *Cook*, 832 So. 2d at 480 (¶¶14-15). In addition, because there is nothing left pending before the Commission, there is no risk of a jury verdict or a judgment that will be inconsistent with any finding or determination made by the Commission. Accordingly, the circuit court has jurisdiction to hear Thornhill's bad-faith claim. *Id.* at (¶12). Therefore, the circuit court erred by dismissing the complaint, and we reverse and remand the case so that Thornhill may proceed on his bad-faith claim in the circuit court.

¶28.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**